**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PORCO, INC., | ) | No. 09-31587 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| QUALITY MEAT PRODUCTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 09-03218 |
| | ) | |
| PORCO, INC. and AMY BOUVET, | ) | |
| | ) | |
| Defendants. | ) | |

**O P I N I O N**

Before the Court is the motion filed by the Debtor, Porco, Inc. (Debtor) and Amy Bouvet (Bouvet) (collectively, the Defendants) to dismiss the two-count adversary complaint filed by the Plaintiff, Quality Meat Products, L.L.C. (Plaintiff). The basic facts as pled by the Plaintiff are as follows.

The Debtor was an Illinois Corporation.[1] Bouvet had been the Debtor's primary shareholder and chief operating officer. The Debtor operated its business upon real estate owned by Martin Ward and/or Ward's Cured Meats (Ward). A dispute arose between the Debtor and Martin Ward, then a minority shareholder of the Debtor, regarding the operation of the Debtor. This dispute led to the filing of two lawsuits in state court, which were ultimately settled. Under the settlement agreement resolving both lawsuits, certain real estate was to be conveyed by Ward to the Debtor free and clear of any encumbrance in exchange for the Debtor paying off a loan of Ward's in the amount of $144,978 and releasing a personal guaranty of Martin Ward on a $500,000 line of credit.

---

[1] According to the complaint, the DEBTOR was incorporated in the State of Illinois in December 2002, but is no longer in good standing.

1

Additionally, the parties agreed both lawsuits would be dismissed and they would enter into a mutual release and indemnification agreement.

After the parties executed the settlement agreement, Bouvet, individually and on behalf of the Debtor, authorized and directed that, instead of the Debtor, the grantee in the deed to the real estate should be The Fog, LLC (Fog), an entity created in December of 2003. Bouvet was the sole shareholder of Fog. A general warranty deed transferring the real estate to Fog was recorded with the St. Clair County Recorder of Deeds in Illinois on October 28, 2004. The Debtor received no consideration for this transfer of its contractual interest in the real estate to Fog.

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 22, 2009. The Trustee opted not to bring an action to set aside the transfer to Fog, and the Plaintiff, an unsecured judgment creditor of the Debtor, obtained permission to pursue the matter.[2] The Plaintiff subsequently filed its first amended complaint containing two counts. Under Count I, the Plaintiff seeks to set aside the conveyance of the real estate to Fog as a fraudulent transfer under § 544(b) of the Bankruptcy Code and applicable state law. *See* 11 U.S.C. § 544(b). Under Count 2, the Plaintiff seeks to set aside the transfer under § 548(e) as a self-settled trust or similar device. *See* 11 U.S.C. § 548(e).[3] The Defendants moved to dismiss, alleging the complaint fails to state a claim upon which relief can be granted. A hearing was held, and the matter was taken under advisement.

---

[2]On February 1, 2010, the Defendants moved to dismiss the original complaint on the grounds that the Plaintiff lacked standing to file the complaint because only the Trustee has standing to avoid fraudulent transfers. In response, the Plaintiff filed a motion for retroactive approval to prosecute the fraudulent transfer claim as a derivative action complaint, alleging the Trustee had declined to pursue the fraudulent transfer, and that recovery would significantly increase the distribution to all creditors. *See In re Racing Services, Inc.*, 540 F.3d 892 (8th Cir. 2008) (holding that a creditor may proceed derivatively when the trustee consents or does not formally oppose the creditor's suit); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000) (acknowledging that if a trustee unjustifiably refuses a demand to bring an action to enforce a colorable claim of a creditor, the creditor may obtain the permission of the bankruptcy court to bring the action in place of the trustee). At the hearing held on both motions, the Court denied the Defendant's motion to dismiss and granted the Plaintiff's motion for retroactive approval to prosecute the derivative action. Orders memorializing this decision were entered on March 16, 2010.

[3]The Plaintiff had filed its original complaint seeking to set aside the transfer to Fog only under § 548(e) as a self-settled trust or similar device. The Defendants filed a motion to dismiss the complaint, but before their motion could be ruled upon, the Plaintiff filed an amended complaint additionally seeking to avoid the transfer to Fog under § 544. The Defendants subsequently filed an amended motion to dismiss the amended complaint, which is currently before this Court.

2

Motions to dismiss for failure to state a claim upon which relief can be granted are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, incorporated into bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000). The purpose of such a motion is not to decide the merits of the case, but to test the sufficiency of the complaint. *Veazey v. Communications & Cable of Chicago, Inc.*, 194 F. 3d 850 (7th Cir. 1999). Dismissal is not warranted unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d. 690 (7th Cir. 1999). However, conclusory allegations not supported by factual assertions will not be taken as true. *Mid-America Regional Bargaining Ass'n v. Will County Carpenters Dist. Council*, 675 F.2d 881 (7th Cir. 1982).

In their amended motion to dismiss, the Defendants contend the claim contained in Count I is barred by the applicable state statute of limitations. Specifically, the Defendants assert that Count I, on its face, shows an action to avoid a fraudulent transfer is time-barred under the applicable 4-year statute of limitations provided in the Illinois Uniform Fraudulent Transfer Act. *See* 740 ILCS 160/10.

According to the complaint, the deed showing the transfer of the real estate from Ward to Fog was recorded in St. Clair County on October 28, 2004. The Debtor filed bankruptcy on June 22, 2009, and the Plaintiff filed its complaint to recover a fraudulent transfer on November 2, 2009, both events occurring more than 4½ years after the deed to Fog was recorded. The Defendants additionally assert that, because the deed was filed as a public record, there was no concealment of

the transaction, and therefore there is no reason to toll the statute of limitations.

The Plaintiff responds that the subject of its fraudulent conveyance action is *not* the recording of the deed to Fog, but rather, is the concealed transfer to Fog of the Debtor's equitable interest in the real estate granted to the Debtor in the settlement agreement. Therefore, according to the Plaintiff, the date the deed from Ward to Fog was recorded is not relevant to determining whether its fraudulent transfer action was filed within the applicable statute of limitations. Instead of transferring the real estate to the Debtor as required under the settlement agreement, the deed shows Ward transferred the real estate to Fog, and this conveyance could not "reasonably have been discovered" until the filing of the bankruptcy case, as there was no public record indicating the Debtor's interest in the real estate. Therefore, the Plaintiff argues, the filing of the bankruptcy case begins the running of the statute of limitations.

Section 544(b) incorporates applicable state fraudulent transfer law. The applicable state statute is the Illinois Uniform Fraudulent Transfer Act, found at 740 ILCS 160/5, and it provides in pertinent part as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> > (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

4

The applicable statute of limitations for bringing a claim of fraudulent transfer is found in 740 ILCS 160/10 and provides, in part, as follows:

> § 10. A cause of action with respect to a fraudulent transfer or obligation under this Act is extinguished unless action is brought:
>
> (a) under paragraph (1) of subsection (a) of Section 5, within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or the obligation was or could reasonably have been discovered by the claimant.

In arguing that the face of the complaint shows the claim set forth in Count I is time-barred, the Defendants focus on the transfer from Ward to Fog. However, according to the Plaintiff, this is not the transfer it is seeking to set aside as fraudulent. Rather, by Count I, the Plaintiff seeks to set aside the transfer from the Debtor to Fog of its equitable/contractual interest in the real estate that was granted to the Debtor in the settlement agreement. It is the Debtor's contractual/equitable interest in the real estate that was not discoverable because the settlement agreement was not a matter of public record. This is the transaction – from the Debtor to Fog – that the Plaintiff in Count I asserts was concealed.

The Plaintiff alleges in Count I, among other things, that Amy Bouvet, on behalf of the Debtor, transferred the Debtor's contractual interest in the real estate granted in the settlement agreement to Fog, with actual intent to hinder, delay, or defraud the creditors of the Debtor, and that the Debtor did not receive a reasonably equivalent value in exchange for the transfer.[4] The amended complaint further alleges that this transfer of the Debtor's interest was concealed by Bouvet, and there was no public record showing that the Debtor was entitled to ownership of the real estate. Finally, the amended complaint alleges that the complaint was brought within one year after the

---

[4] The complaint also alleges that the Debtor, through Bouvet, retained possession or control of the real estate, and that before the transfer from the Debtor to Fog was made, the Debtor had been sued or had been threatened with being sued.

fraudulent transfer could have been reasonably discovered by the Plaintiff.

Taking these allegations as true, as this Court must, these allegations clearly bring Count I within the one-year discovery provision of the statute of limitations and create a question of fact to be resolved at trial. If the Plaintiff proves these allegations, then the state statute of limitations would not bar Count I. If the Plaintiff does not prove these allegations, then Count I would be time barred. Therefore the Defendant's motion to dismiss Count I should be denied.

The Defendants also seek to dismiss Count II of the complaint for failure to state a cause of action.[5] Count II is brought under § 548(e) of the Bankruptcy Code which provides in part as follows

> (e)(1) In addition to any transfer that the trustee my otherwise avoid, the trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition if –
>
> (A) such transfer was made to a self-settled trust or similar device;
>
> (B) such transfer was by the debtor;
>
> (C) the debtor is a beneficiary of such trust or similar device; and
>
> (D) the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

The Defendants seek dismissal of Count II on the basis that:

> [T]he complaint fails to state a cause of action pursuant to 11 U.S.C. § 548(e) for the following reasons:
>
> a) The transfer was not made to a self-settling trust or similar device as the transfer was from Ward's Cured Meats, Inc., to a third party, to The Fog, LLC, a limited liability company of which Amy Bouvet was the sole member. Additionally the consideration for the transfer was paid by Amy Bouvet and not Porco, Inc.

---

[5]In the amended complaint, both counts are labeled as "Count I." However, as this is clearly a typographical error, this Court will refer to the second count as "Count II."

6

      b)      The transfer was not made by the debtor but was made by a third party, Wards Cured Meats, Inc.

      c)      The debtor, Porco, Inc., is not and never was the beneficiary nor owner of The Fog, LLC and in [sic] not alleged by Plaintiff to be the owner or beneficiary.

Section 548(e) contains four elements for a transfer to fall within its provisions:

1. there must be a transfer to a self-settled trust or similar device;

2. the transfer must be made by a debtor;

3. the debtor must be the beneficiary of the transfer; and

4. there must be an actual intent to hinder delay or defraud.

5 COLLIER ON BANKRUPTCY ¶ 548.09A[1][a] (15th ed.rev.).

This Court is not aware of any bankruptcy court opinions construing the "self-settled or similar device" language of § 548(e), and the issues raised herein are issues of first impression. A leading treatise, COLLIER ON BANKRUPTCY, gives a bit of guidance, stating that bankruptcy courts will likely turn to state law for a definition of the phrase "self-settled trust or similar device," and that Congress's intent was to have the provision interpreted broadly. 5 COLLIER ON BANKRUPTCY ¶ 548.09A[1][a] (15th ed.rev.).

COLLIER ON BANKRUPTCY also states that the addition of § 548(e) was a reaction to state legislatures overturning the common law rule that a self-settled spendthrift trust may be reached by creditors or a trustee in bankruptcy. 5 COLLIER ON BANKRUPTCY ¶ 548.10[3][a] (15th ed.rev.). Specifically, the legislative history of § 548(e) indicates that § 548(e) was enacted to address self-settled or "domestic asset protection" trusts, which had been authorized by some states and allowed debtors to avoid paying creditors. *See* H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 449-50 (2005) (statement of Rep. Cannon). At the time § 548(e) was added to the Bankruptcy Code, five states had

enacted such statutes (Alaska, Delaware, Nevada, Rhode Island, and Utah). *Id*. at 449. The state of Illinois has not enacted such a statute.

In Count II, the Plaintiff alleges the actions of the Defendants in transferring the Debtor's interest in the real estate to Fog gave rise to a resulting or constructive trust. Thus, the issue becomes whether a resulting or constructive trust is a "self-settled trust or similar device."

This Court will begin its analysis with a short, general discussion of trusts. There are basically two kinds of trusts, express and implied, the latter of which includes both resulting and constructive trusts. Chester, Bogert & Bogert, THE LAW OF TRUSTS AND TRUSTEES § 451, 280-81 (3rd ed. 2008). An express trust is a trust that owes its origins to an expression of an intent by a settlor that a trust shall come into being, coupled with the performance of some necessary act of transfer or conveyance. *Id*.

In the case before this Court, there is no allegation of an intent to create a trust. Therefore, it is clear that no self-settled trust was created. However, the issue remains whether the facts as alleged in the complaint show the creation of a "similar device." COLLIER ON BANKRUPTCY notes that the congressional decision to leave undefined the terms used in § 548(e), such as "similar device," indicates an intent for courts to interpret the statute broadly so as to effectuate its aims, noting that, "even if crafty lawyers draft devices not technically 'self-settled trust[s],' court[s] will have the power to scrutinize them under the 'similar device' provision." 5 COLLIER ON BANKRUPTCY ¶ 548.10[3][a] (15th ed. rev.).

The Plaintiff asserts that the complaint is sufficient to state a cause of action under § 548(e) because the language of Count II tracks the statutory language of § 548(e) in that it alleges there was a transfer of the Debtor's equitable interest in the real estate arising from the contractual rights granted in the settlement agreement, that this transfer was made by the Debtor for the benefit of the Debtor, and that the transfer was made to a device similar to a self-settled trust, that being to Fog, and that the transfer was made within ten years of the date the bankruptcy petition was filed. The

8

thrust of the allegation is that, because Fog was involuntarily dissolved by the State of Illinois and Bouvet remains in total control of the title to the real estate, and because of the intended use of Fog for the benefit of the Debtor's business, a constructive trust or a resulting trust was created and Fog held the real estate for the benefit of the Debtor.

Specifically, the complaint alleges:

> 79. By reason of those circumstances and the intended use of that limited liability company for the benefit of the Debtor's business, a constructive trust was created by which the Fog, LLC became a constructive trust of and for the Debtor.
>
> 80. By reason of those circumstances and the use of the Debtor's funds to pay off the secured loan against the real estate and intended use of that limited liability company for the benefit of the Debtor's business, a resulting trust was created by which the Fog, LLC held the real estate in trust of and for the Debtor.

In its memorandum of law in opposition to the Defendant's motion to dismiss, the Plaintiff asserts that the constructive or resulting trust was a "similar device" to a self-settled trust under the language of § 548(e).

Under Illinois law, resulting trusts arise by operation of law and are generally created where an express trust fails, or where an express trust terminates prior to the exhaustion of the trust estate, or where one person pays for property and another takes title. *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 272 Ill.App.3d 370, 649 N.E.2d 511, 519, 208 Ill.Dec. 455 (1995); *see Matter of Engel's Estate*, 87 Ill.App.3d 273, 408 N.E.2d 1134, 42 Ill.Dec. 425 (Ill.App. 3 Dist. 1980) (resulting trust arose where son holds funds given to him by his mother in his bank account); *Carlson v. Carlson*, 74 Ill.App.3d 673, 393 N.E.2d 643, 30 Ill.Dec. 607 (Ill.App. 1 Dist. 1979) (resulting trust where wife puts home in husband's name to avoid creditors). On the other hand, a constructive trust, also created by operation of law, is generally imposed where actual or constructive fraud is considered as equitable grounds for raising the trust or where there is a

fiduciary duty and a subsequent breach of that duty. *See, e.g.*, *Amendola v. Bayer,* 907 F.2d 760, 762-63 (7th Cir. 1990) (noting a constructive trust will not be imposed unless the claimant makes a showing of wrongdoing, such as fraud, breach of fiduciary duty, duress, coercion or mistake). A constructive trust may be used to compel a party who unfairly holds a property interest or money to convey that property to the one to whom it justly belongs. *A.T. Kearney, Inc. v. INCA Intern., Inc.*, 132 Ill.App.3d 655, 660, 477 N.E.2d 1326, 1332, 87 Ill. Dec. 798, (1985). What distinguishes a resulting trust from a constructive trust is that the resulting trust is focused on the intent of the parties, while the constructive trust is imposed irrespective of the parties' intent. *Bozeman v.Sheriff*, 42 Ill.App.3d 228, 355 N.E.2d 624,626 (Ill.App. 1 Dist. 1976).

In construing the phrase "similar device," consideration should be given to Congress's purpose in enacting § 548(e). As pointed out earlier, the purpose of § 548(e) was to reverse the actions of state legislatures that had overturned the common law that a self-settled spendthrift trust could be reached by creditors or a trustee in bankruptcy. The basis of the state legislation was to authorize or legitimize "domestic asset protection trusts." These domestic asset protection trusts generally require (1) an irrevocable trust; (2) an independent trustee; (3) absolute discretion; and (4) distributions to beneficiaries, including the settlor. *See* David G. Shaftel, *Comparison of the Twelve Domestic Asset Protection Trust Statutes*, 34 ACTEC J. 293 (2009). Accordingly, these requirements contemplate the creation of an express trust. From this analysis, this Court concludes that the "similar device" language in § 548(e) also requires an express trust. However, resulting trusts or constructive trusts, which are the basis of Count II, are not express trusts. Rather, as was discussed more fully above, resulting trusts or constructive trusts are remedial in nature and arise by operation of law. They are created by the courts and not by the express grant of a settlor. Therefore, constructive and resulting trusts cannot be considered "similar devices" to self-settled asset protection express trusts.

As the first element of § 548(e) has not been met, the Defendants' motion to dismiss Count II of the complaint should be allowed. Accordingly, there is no need to discuss the other three elements.

A separate Order will be entered.

ENTERED: March 30, 2011

       /s/ William V. Altenberger
UNITED STATES BANKRUPTCY JUDGE